UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TATYANA PROKOPENKO, | No. 2:18-cv-00168-CKD |
| Plaintiff, | |
| v. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff Tatyana Prokopenko seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").[1] Plaintiff filed a motion for summary judgment, which the Commissioner opposed by filing a cross-motion for summary judgment, and plaintiff replied. (ECF Nos. 14, 20, 23.) For the reasons discussed below, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and AFFIRMS the Commissioner's final decision.

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15) and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 7, 18.).

1

I.      BACKGROUND

Plaintiff was born on December 16, 1955; finished the eighth grade and studied nursing in a college in the Ukraine; and previously worked as a caretaker and sorter.[2] (Administrative Transcript ("AT") 35-39, 48, 159.) In April 2015, plaintiff applied for both DIB and SSI, alleging that her disability began on February 22, 2014. (AT 159-72.) Plaintiff claimed that she was disabled due to thyroid disorder, fatigue, trembling, shaking, stomach pain, body cramps, joint pain, back pain, and high blood pressure. (AT 54-55.) After plaintiff's applications were denied initially and on reconsideration, an ALJ conducted a hearing on January 6, 2017. (AT 30-53.)

At the hearing, plaintiff was represented by an attorney and spoke through a Russian interpreter. (Id.) The ALJ ordered a consultative medical examination of plaintiff, which occurred on February 10, 2017. (AT 49-50, 393-98.) The ALJ subsequently issued a decision dated May 31, 2017, determining that plaintiff had not been under a disability as defined in the Act, from February 22, 2014, through the date of the decision. (AT 16-22.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on November 21, 2017. (AT 1-4.) Plaintiff then filed this action on January 24, 2018, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II.     ISSUES PRESENTED

Plaintiff's sole contention on appeal is that the ALJ's residual functionary capacity ("RFC") determination was clearly erroneous.

III.    LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV. DISCUSSION

    A. Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's standard five-step analytical framework.[3] Preliminarily, the ALJ determined that plaintiff met the insured status requirements of the Act through June 30, 2016. (AT 18.) At step one, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since February 22, 2014,

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

    Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

    Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

    Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

    Step four: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

    Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

3

the alleged onset date. (Id.) At step two, the ALJ found that plaintiff has the following severe impairments: hyperthyroidism, Graves' disease, and knee osteoarthritis. (Id.) However, at step three the ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC, finding that plaintiff could perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b) "with occasional lifting of 20 pounds, frequent lifting of 10 pounds, standing for six hours in an eight-hour workday, and sitting for six hours in an eight-hour workday." (AT 19.) At step four, the ALJ determined that plaintiff is able to perform her past relevant work as a sorter because this occupation does not require work-related activities precluded by plaintiff's RFC. (AT 21.) Therefore, the ALJ concluded that plaintiff has not been under a disability, as defined in the Act from February 22, 2014 through May 31, 2017. (AT 22.)

B. Whether the ALJ's RFC determination was clearly erroneous

An RFC "is the most [one] can still do despite [his or her] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 404.1545(a)(1). "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545).

Importantly, the RFC is determined before step four of the sequential evaluation process, and the claimant bears the burden of proof during the first four steps of this process. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). Moreover, "[t]he mere existence of an impairment is insufficient proof of a disability. . . . A claimant bears the burden of proving that an impairment is disabling." Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (internal citations and quotation marks omitted.) At the same time, however, "[t]he ALJ always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered . . . even when the claimant is represented by counsel.'" Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003) (citing Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)).

4

Here, as the ALJ accurately summarized, plaintiff alleged that her impairments caused the following disabling symptoms: "knee pain, back pain, joint pain, swelling in her feet, cramping in her lower extremities, stomach pain, fatigue, and sleep disturbance." (AT 20, 38-45, 219-25.) However, plaintiff has not submitted any medical opinions regarding any restrictions or limitations caused by her impairments.

Indeed, at the time of the January 6, 2017 hearing, the only opinions in the record were those of the State agency medical consultants, who opined that plaintiff did not have any severe impairment, and was therefore not disabled. (AT 55-60, 71-77.) At the hearing, the ALJ afforded plaintiff an opportunity to supplement the record. Plaintiff's attorney indicated that the record was complete and that she did not have any additional documents to add to the record. (AT 33.) Nonetheless, in order to fully develop the record, the ALJ ordered that plaintiff undergo a consultative medical examination. (AT 49-50.)

On February 10, 2017, plaintiff underwent an internal medicine evaluation and examination with consultative examiner Rajiv Pathak, M.D. (AT 393-98.) Dr. Pathak reviewed plaintiff's medical files, considered her subjective complaints, and performed a physical examination. (Id.) Dr. Pathak opined that plaintiff was capable of medium work, with the additional limitations of lifting 50 pounds occasionally and 25 pounds frequently, as well as standing for six hours and sitting for six hours in an eight-hour workday. (AT 397.) Dr. Pathak further opined that "[b]efore September 2016 and dating back to 2012, [plaintiff] had more symptoms and laboratory evidence of hyperthyroidism and she had more limitations during those times." (AT 398.)

In his decision, the ALJ gave little weight to the State agency consultants' opinions because "[t]he medical evidence indicates that the combination of the claimant's severe impairments limit her to light work." (AT 21.) Additionally, the ALJ gave some weight to Dr. Pathak's opinion, but explained that "the medical evidence supports further restriction to light work, with occasional lifting of 20 pounds and frequent lifting of 10 pounds." (AT 21.) The ALJ further explained that "[w]hile her thyroid condition caused fatigue and she experiences knee pain, the medical evidence indicates that her symptoms improved with treatment. She does not

require an assistive device to walk and treatment notes repeatedly indicate that her gait was normal during the relevant period." (AT 21.)

The ALJ's reasoning is supported by substantial evidence in the record. After plaintiff was prescribed medication for Graves' disease, she "noticed a remarkable improvement in her symptoms with a weight gain of 32 pounds," and her thyroid condition was controlled by medication. (AT 290, 319, 323, 333, 356-57.) Moreover, plaintiff continually presented with a normal gait, without the need of a cane or other assistive device. (AT 292, 320, 333, 356, 368.)

The record here does not include a single medical opinion indicating that plaintiff is or was disabled. Indeed, each opinion in the record is *less* restrictive than the RFC that the ALJ assessed. Clearly, the ALJ gave more credit to plaintiff's subjective complaints than either Dr. Pathak or the State agency medical consultants did. Still, plaintiff argues that the ALJ's RFC determination is clearly erroneous. (ECF No. 14 at 5-9.) Essentially, plaintiff argues that the ALJ committed reversible error because his reasoning for not adopting Dr. Pathak's opinion is not specific enough.[4] Plaintiff's arguments are completely unavailing.

Specifically, plaintiff points to Dr. Pathak's observation that plaintiff had more limitations from 2012 through September 2016, and argues that the ALJ unacceptably failed to "tell us when Ms. Prokopenko's symptoms improved." (Id. at 6.) First, the ALJ clearly pointed to evidence in the record that demonstrated that plaintiff's conditions had improved during the relevant period. (See AT 290, 319, 323, 333, 356-57.) Second, to the extent that the ALJ's decision does not precisely indicate when plaintiff's symptoms improved, the record does not include any opinions from 2012 through 2016 indicating what plaintiff's limitations were at that time. Plaintiff cannot fault the ALJ for failing to specify facts that plaintiff failed to provide.

Similarly, plaintiff asserts that the ALJ erred by failing to discuss plaintiff's nonexertional limitations. (Id. at 7.) Yet, again, the record does not contain any opinion evidence that plaintiff had any nonexertional limitations. Plaintiff claims that Dr. Pathak may have failed to consider

---

[4] The court notes that if the ALJ had simply afforded Dr. Pathak's opinion great weight and assigned a medium RFC, with the same additional limitations as Dr. Pathak, then plaintiff would still be found to be not disabled.

6

these nonexertional limitations because he misunderstood his mandate. (Id. at 7-8.) But, she provides no evidence to support this baseless assumption.

Furthermore, the ALJ provided a detailed, accurate, and unchallenged discussion of the medical evidence in his decision, which does not suggest that plaintiff had any nonexertional limitations. (See AT 20-21.) The only evidence of nonexertional limitations in the record comes from plaintiff's own subjective complaints, which the ALJ determined

> are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. The medical evidence of record indicates that her symptoms improved with treatment, her gait is normal, and she does not require an assistive device to walk.

(AT 21.) As explained, the ALJ's reasoning here is based upon substantial evidence in the record. (See AT 290-92, 319-23, 333, 356-57, 368.)

Finally, plaintiff implies that the ALJ's did not truly consider Dr. Pathak's opinion because the ALJ had already decided how he was going to rule at the January 2017 hearing, before Dr. Pathak performed his evaluation. (ECF No. 14 at 7.) Toward the end of the examination the ALJ explained

> So, counsel, this is what I'm going to do. The state agency found your client's medical conditions not severe so they did not provide any opinions as far as restrictions. The treating physician reports likewise to my knowledge don't have any opinion evidence in there. If I find that your client is limited to light work she grids out because there's no transferable skills for SVP 2 jobs. So, essentially that's— in my mind, sort of where I'm at. I'm either finding the case severe and if I do it's at least light, then it grids out. [Or] I find it non severe like the state agency. What I'm going to do is order a medical exam for your client.

(AT 49.) Contrary to plaintiff's intimation, this does not demonstrate that the ALJ had already made up his mind before reviewing Dr. Pathak's opinion. Rather, it demonstrates that the ALJ had sufficiently reviewed the medical record; performed a preliminary analysis; identified that it was lacking sufficient medical opinions; and ordered further development of the record. Accordingly, the ALJ conducted himself appropriately. See Celaya, 332 F.3d at 1183.

Fundamentally, plaintiff had the burden to prove that her impairments were disabling. Matthews, 10 F.3d at 680. Yet, she failed to provide any medical opinions regarding her

7

functional capacity and alleged limitations.  The ALJ fulfilled his duty to develop the record by ordering a consultative examination and affording plaintiff an opportunity to supplement the record.  Subsequently, the ALJ provided an RFC determination that took into account plaintiff's subjective complaints and the objective medical evidence as a whole, and which was *more* restrictive than the opinion proffered by the consultative examiner.

Therefore, while plaintiff would interpret the record differently, the ALJ's decision is reasonable and supported by substantial evidence, and there are no grounds to reverse.  See Tommasetti, 533 F.3d at 1038.

## V. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14) is DENIED.
2. The Commissioner's cross-motion for summary judgment (ECF No. 20) is GRANTED.
3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner.
4. The Clerk of Court shall close this case.

Dated:  January 11, 2019

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE